**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION**

**ALBEMARLE CORPORATION**                                            **PLAINTIFF**

**VS.**                         **Case No. 06-CV-1002**

**LOUISIANA AND NORTHWEST
RAILROAD COMPANY**                                           **DEFENDANT**

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW and PRELIMINARY INJUNCTION**

Before the Court is Defendant Louisiana and Northwest Railroad Company's ("LNW") Motion to Dissolve or Modify Temporary Restraining Order (Doc. 3). Plaintiff Albemarle Corporation ("Albemarle") has responded. (Doc 10). The Court finds this motion ripe for consideration, and upon consideration, for the following reasons, finds the motion should be and hereby is granted in part and denied in part.

### **I. Procedural Background**

On the afternoon of December 21, 2005, Albemarle filed a petition for temporary restraining order and other injunctive relief in the Circuit Court of Columbia County, Arkansas. The petition sought injunctive and declaratory relief with respect to several agreements, to which Albemarle and LNW were parties, covering pipelines and rail service. A few hours after the petition was filed, the Columbia County Circuit Court issued a temporary restraining order, ex parte, in favor of Albemarle and against LNW. The TRO required that the parties maintain the status quo as their business relationship existed on and prior to

-1-

November 22, 2005, that LNW not interfere with certain of Albemarle's pipelines that crossed under LNW's rail tracks, that LNW not remove or disrupt the location, condition or Albemarle's ability to use and fully utilize certain sidetracks, that LNW continue to provide to Albemarle the same kind and quality of switching and weighing services on Albemarle's property and within Albemarle's facility that it has previously provided to Albemarle in an amount and frequency equal to within a commercially reasonable variation from the service provided to Albemarle on and before November 22, 2005, and that LNW take no action meant to result in or actually resulting in a frustration of Albemarle's continued business operations. The TRO was issued without a bond.

LNW filed a notice of removal with this Court on January 6, 2006. LNW also promptly filed a motion to dissolve or modify the temporary restraining order. After removal, LNW filed its answer to Albemarle's petition. LNW also filed counterclaims against Albemarle, seeking declaratory relief and damages for the alleged wrongful entry of the TRO. Two other motions are pending before the Court: (1) Albemarle's motion to sever and remand and (2) Albemarle's motion to transfer this case to the Surface Transportation Board (STB). The Court will address these two motions in a separate order of even date. In these findings of fact and conclusions of law, the Court will only consider LNW's request for the modification of the injunctive relief.

On January 19, 2006, a hearing was held before this Court on

LNW's motion to dissolve or modify temporary restraining order. Appearing on behalf of LNW was John Dewey Watson of the Little Rock, Arkansas, law firm of Friday, Eldredge & Clark. Appearing on behalf of Albemarle was Jim Julian of the Little Rock, Arkansas, law firm of Chisenhall, Nestrud & Julian, and Ronny J. Bell of the Bell Law Firm of Magnolia, Arkansas.

The Court now enters its findings of fact and conclusions of law in this matter pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II. Findings of Fact

Albemarle operates two production facilities in Columbia County, Arkansas: The South Plant and the West Plant. The West Plant is located approximately seven miles west of Magnolia, Arkansas. The South Plant is located approximately three miles south of Magnolia. Pipelines run between the two plants and from the plants to subsurface brine wells. These pipelines cross under LNW's rail tracks. Since 1969, Albemarle and LNW have entered into certain agreements concerning the pipelines. Specifically, these agreements (referred to collectively as "the pipeline agreements") are as follows:

(A) An agreement dated January 11, 1969, concerning a four (4) inch natural gas pipeline crossing underneath LMW's tracks in the Northwest Quarter (NE 1/4) of Section 1, Township 18 South, Range 21 West, Columbia County, Arkansas.

(B) An agreement dated January 11, 1969, concerning a ten

(10) inch brine pipeline transporting tail brine, crossing underneath LNW's tracks Northwest Quarter (NE 1/4) of Section 1, Township 18 South, Range 21 West, Columbia County, Arkansas.

(C) An agreement dated January 11, 1969, concerning a ten (10) inch brine pipeline transporting tail brine, crossing underneath LNW's tracks Northwest Quarter (NE 1/4) of Section 19, Township 18 South, Range 21 West, Columbia County, Arkansas.

(D) An agreement dated March 17, 1969, concerning a six (6) inch natural gas pipeline installed at a point 1427 feet northwest of point of switch on spur to Albemarle's plant.

(E) An agreement dated October 20, 1969, concerning a ten (10) inch brine pipeline that crosses underneath LNW's tracks in the Northeast Quarter (NE 1/4) of Section 1, Township 18 South, Range 21 West, Columbia County, Arkansas.

(F) An agreement dated March 1, 1990, concerning a six (6) inch pipeline located in the East 1/2 Northeast 1/4, Section 1, Township 18 South, Range 21 West, Columbia County Arkansas.

[AND](G) A letter agreement dated August 30, 2001, concerning a three (3) inch gas pipeline and a fiber optic cable located in the East 1/2 Northeast 1/4, Section 1, Township 18 South, Range 21 West, Columbia County,

Arkansas.

LNW provides railroad service to Albemarle at its Columbia County plants. LNW is the exclusive provider of rail service to Albemarle's South Plant. LNW provides sidetracks for Albemarle to store railcars. Albemarle uses the sidetracks at issue in this lawsuit for the storage of both raw materials and finished products that are received and shipped via rail car. The sidetracks are covered by the following agreements (referred to collectively as "the sidetrack agreements"):

- (A) A track Lease Agreement, dated October 26, 1976, concerning the side track known as the Kerlin Passing Track.
- (B) An agreement for industry track, dated November 5, 1976, concerning a sidetrack in Section 18, Township 18 South, Range 20 West, Columbia County, Arkansas.
- (C) A track lease agreement dated November 1, 1984, concerning the sidetrack known as the Switch Track.
- (D) A track lease agreement, dated November 1, 1984, concerning the sidetrack known as the Track "C."
- (E) A track lease agreement, dated August 1, 1999, concerning the two sidetracks known respectively as Track "A" and Track "B."
- [AND](F) A track lease agreement, dated August 1, 1999, concerning a sidetrack described as "A sidetrack at State Line, AR/LA beginning at Mile Post 25.00 and extending southward on the east side of, and parallel

-5-

> to, the Railroad Company's main track to Mile Post
> 25.18, a distance of approximately 950 track feet" with
> said sidetrack is located in Claiborne Parish,
> Louisiana.

LNW also provides switching and weighing services to Albemarle. From the record, it is unclear to what extent these agreements were memorialized. However, LNW now contends that these services are covered by Tariff 8002-E.

On November 23, 2005, LNW delivered a letter to Albemarle. By this letter, LNW sought to terminate the pipeline and sidetrack agreements. The letter proposed new terms for these agreements. Further, the letter demanded new terms for the switching services which LNW provided to Albemarle. The new switching terms, as set forth in the November 23 letter, are similar to those found in a document titled "Freight Tariff LNW 8002-E."

### III. **Conclusions of Law**

Pursuant to 28 U.S.C. § 1450, whenever an action is removed from a State court to a district court any injunction entered in the action prior to removal remains in full effect until dissolved or modified by the district court. However, the Federal Rules govern the future of the proceedings. Palmisano v. Allina Health Systems, Inc., 190 F.3d 881, 885 (8th Cir. 1999). Rule 65 of the Federal Rules of Civil Procedure governs the issuance of a preliminary injunction. When a court considers the issuance of a preliminary injunction it must consider and balance

-6-

four factors: (1) the threat of irreparable harm to the movant absent the injunction; (2) the hardship that the injunction's issuance would inflict on the non moving party; (3) the possibility of success on the merits; and (4) the public interest. <u>Pottgen v. Missouri State High School Activities Association</u>, 40 F.3d 926 (8th Cir. 1994). The burden of establishing the propriety of a preliminary injunction is on the party seeking it, and injunctive relief is an extraordinary remedy which requires proof that there is no adequate remedy at law. <u>Dataphase Systems, Inc. v. C.L. Systems, Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981).

Because, by separate Order entered of even date, the Court is referring certain parts of this lawsuit to the Surface Transportation Board (STB), and because the Court believes it does not have the authority to pass on (by granting injunctive relief or otherwise) the reasonableness of the rates charged by LNW or other matters within the jurisdiction of the STB, the Court will limit this award of injunctive relief to the dispute over the pipeline agreements.

### A. Irreparable harm

Albemarle has shown a sufficient risk of irreparable harm as to warrant injunctive relief. The record from Columbia County Circuit Court contains the Affidavit of Danny Wood where he avers that Albemarle's ability to use the pipelines is critical to its ability to operate its production facilities, discontinuing the pipelines would result in workforce reduction and danger to the

environment, and the removal of the pipelines could have adverse effects on the environment.

### B. Hardship to the Defendant

The hardship to LNW in granting this injunctive relief is slight. There is no indication from the record evidence that the pieplines are interfering in any way with LNW's railroad right of way.

### C. Probability of Success

Albemarle has demonstrated a sufficient probability of success to warrant injunctive relief. Albemarle has shown documents which suggest that it has a fee or easement in the lands where the pipelines cross under LNW's railtracks and LNW's interest in the lands is limited to a right-of-way.

### D. Public Interest

The Court finds the public interest balances in favor of granting the preliminary injunction.

Upon consideration, based on the arguments and submissions of the parties, the Court finds Albemarle has met its burden in showing that it is entitled to relief pendente lite against LNW.

## IV. Conclusion

In the light of the above findings, the Court finds that LNW's Motion to Dissolve or Modify Temporary Restraining Order should be and hereby is **granted in part** and **denied in part**.

A preliminary injunction, superceding and modifying the temporary injunction issued by the Circuit Court of Columbia County, Arkansas, is hereby issued in this matter, to wit:

LNW shall not remove or otherwise disrupt the location and operation of the various pipelines that Albemarle owns and operates that run beneath the railroad track owned by LNW, including but not limited to, those pipelines described in the following agreements:

- (A) An agreement dated January 11, 1969, concerning a four (4) inch natural gas pipeline crossing underneath LMW's tracks in the Northwest Quarter (NE 1/4) of Section 1, Township 18 South, Range 21 West, Columbia County, Arkansas.
- (B) An agreement dated January 11, 1969 concerning a ten (10) inch brine pipeline transporting tail brine, crossing underneath LNW's tracks Northwest Quarter (NE 1/4) of Section 1, Township 18 South, Range 21 West, Columbia County, Arkansas.
- (C) An agreement dated January 11, 1969 concerning a ten (10) inch brine pipeline transporting tail brine, crossing underneath LNW's tracks Northwest Quarter (NE 1/4) of Section 19, Township 18 South, Range 21 West, Columbia County, Arkansas.
- (D) An agreement dated March 17, 1969, concerning a six (6) inch natural gas pipeline installed at a point 1427 feet northwest of point of switch on spur to Albemarle's plant.
- (E) An agreement dated October 20, 1969, concerning a ten (10) inch brine pipeline that crosses underneath LNW's

>               tracks in the Northeast Quarter (NE 1/4) of Section 1,
>               Township 18 South, Range 21 West, Columbia County,
>               Arkansas.
>     (F)  An agreement dated March 1, 1990, concerning a six (6)
>          inch pipeline located in the East 1/2 Northeast 1/4,
>          Section 1, Township 18 South, Range 21 West, Columbia
>          County Arkansas.
> [AND](G) A letter agreement dated August 30, 2001, concerning a
>          three (3) inch gas pipeline and a fiber optic cable
>          located in the East ½ Northeast 1/4, Section 1,
>          Township 18 South, Range 21 West, Columbia County,
>          Arkansas.

This preliminary injunction shall remain in force and effect until further order of this Court.

Pursuant to Federal Rule of Civil Procedure 65(c) Albemarle shall post a security in the amount of one million dollars ($1,000,000.00). This security shall cover the injunctive relief granted herein, as well as the potential damages LNW may recover from Albemarle in the event that the STB finds the rates currently charged by LNW to Albemarle are reasonable or sets the rates at an amount higher than Albemarle has currently paid. LNW may accept and deposit current payments made under the rates effective prior to November 23, 2005, from Albemarle relating to the tariffs or charges for shipping, weighing and sidetrack service. LNW's acceptance and deposit of these payments shall not be deemed a waiver of LNW's right to increased payments under

the new tariff or otherwise.

**IT IS SO ORDERED** this 23rd day of January, 2006.

                                                <u>/s/ Harry F. Barnes</u>
                                                Hon. Harry F. Barnes
                                                U.S. District Judge